UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, | ) ) ) |
| Plaintiff, | ) ) ) Case No. 21-cv-00525-FJG |
| v. | ) ) |
| GS LABS LLC, | ) ) ) |
| Defendant. | ) ) |

# ORDER

On January 4, 2022 counsel for GS Labs, LLC contacted the Court and requested a discovery dispute teleconference. Defendant raises two issues with the Court: 1) whether Blue Cross and Blue Shield of Kansas City ("Blue KC") may claim protection of the attorney work product doctrine relative to two documents in the case and 2) whether GS Labs may depose Maureen Vogel.

On January 10, 2022, counsel for Blue KC contacted the Court and requested a discovery dispute teleconference regarding Blue KC's Motion to Extend Deadlines and the related matter of GS Labs' outstanding discovery obligations. Blue KC outlined three areas that the parties have reached an impasse on: 1) GS Labs has not committed to completing discovery for certain documents by a reasonable date: 2) GS Labs has not committed to producing certain documents and 3) GS Labs has failed to answer certain interrogatories. The Court held oral argument on both parties' discovery disputes on January 20, 2022 and rules as follows.

**I. <u>GS Labs Discovery Issues:</u>**

    **A. <u>Deposition of Maureen Vogel</u>**

GS Labs seeks to depose Maureen Vogel, who is an Associate General Counsel for Blue KC's legal department. Ms. Vogel was identified by Blue KC in its initial Rule 26(a)(1) disclosures as an "individual likely to have discoverable information that Blue KC may use to support its defenses and claims." GS Labs states that it does not wish to depose Ms. Vogel as to any legal strategy, but rather seeks to question her regarding the core business activities relating to GS Labs. GS Labs states that the test set out by the Court in <u>Shelton v. Am. Motors Corp.</u>, 805 F.2d 1323, 1327 (8th Cir. 1986), which imposes limitations on opposing counsel depositions, does not apply to Ms. Vogel because she was not operating in a litigation capacity, but rather was serving as an attorney in support of provider contracting. GS Labs cites to <u>Price v. Jarett</u>, No. 8:15CV200, 2017 WL 1437056 (D.Neb. Apr. 21, 2017) and <u>Wright v. Life Investors Insur. Co. of America</u>, No. 2:08-CV-03-P-A, 2009 WL 4347024 (N.D.Miss. Nov. 24, 2009), in support of its position.

In opposition, Blue KC states that beginning in December 2020, it became aware of potentially fraudulent or abusive activity related to GS Labs. Blue KC states that it received a second alert regarding GS Labs in January 2021 and requested that its legal department furnish advice regarding GS Labs and its claims as of January 19, 2021. On March 2, 2021, Blue KC received a letter from GS Labs' attorney, Barbara Person regarding GS Labs' claims. In early March 2021, Blue KC was investigating GS Labs and Blue KC's in house legal counsel was investigating and preparing for potential litigation or other legal action. Blue KC's counsel stated:

> [w]hile anticipating potential litigation but also simultaneously taking steps to avoid litigation, Blue KC entered into negotiations with GSL, regarding

> its claim. . . .Because GS Labs insisted on conducting negotiations
> through its attorneys, Blue KC was also represented at those negotiations
> by Ms. Vogel, as in-house counsel. Blue KC was also represented by Erin
> Cutler, Department Vice President of Provider Contracting and Network
> Strategy at the negotiations.

(Jan. 12, 2022 letter from Aaron Schwartz). Counsel states that Ms. Vogel's involvement in the matter has been two-fold: 1) conducting a legal investigation into the claims made by GS Labs to prepare for the prospect of litigation and 2) participating in negotiations with GS Labs' outside counsel, Ms. Person and Mr. Beck following receipt of Ms. Person's letter. Blue KC states that deposing Ms. Vogel regarding the pre-suit investigation is not appropriate under <u>Shelton</u> because Ms. Vogel was not the sole person in possession of this information and there are other ways to obtain the information. Additionally, Blue KC states that GS Labs has not shown that the information is crucial to their claims or defenses.

> In general, confidential communications between individuals and
> attorneys for the purpose of obtaining or rendering legal advice are
> privileged. <u>See</u> <u>Upjohn v. United States</u>, 449 U.S. 383, 394–95 (1981);
> <u>see</u> <u>also</u> <u>Fisher v. United States</u>, 425 U.S. 391, 403–04 (1976); <u>United
> States v. Horvath</u>, 731 F.2d 557, 561 (8th Cir. 1984); <u>Diversified Indus.,
> Inc. v. Meredith</u>, 572 F.2d 596, 601 (8th Cir. 1977) (The attorney-client
> privilege is "the long established rule that confidential communications
> between an attorney and his client are absolutely privileged from
> disclosure against the will of the client."). The purpose of the attorney-
> client privilege "is to encourage full and frank communication between
> attorneys and their clients and thereby promote broader public interests in
> the observance of law and administration of justice." <u>Upjohn Co.</u>, 449 U.S.
> at 389.

<u>Krueger v. Ameriprise Fin., Inc., LLC</u>, No. CV 11-2781 (SRN/JSM), 2014 WL 12597432, at *9 (D. Minn. May 7, 2014). In <u>Krueger</u>, the Court stated that "[t]he attorney-client privilege applies only to confidential communications made to facilitate legal services, and does not apply where a lawyer acts as a scrivener or business advisor. . . .For the

3

Case 4:21-cv-00525-FJG   Document 115   Filed 02/02/22   Page 3 of 12

attorney-client privilege to apply, the legal advice must predominate over the business advice, and not be merely incidental." Id. at *10 (internal citations omitted).

Counsel for Blue KC admits that that Ms. Vogel was acting in two different capacities – she was investigating the claims against GS Labs and also negotiating with GS Labs. During oral argument, counsel for Blue KC stated: "[Ms. Vogel] was doing two things. She was – and this is identified in the documents that were just up on the screen. She was doing a fraud investigation that led to litigation, and she was also negotiating. She was identified on our Rule 26 disclosures as someone who had eyes on the negotiations." (Transcript of Jan. 20, 2022 Oral Argument). In Price v. Jarett, No. 8:15CV200, 2017 WL 1437056 (D.Neb. Apr. 21, 2017), the court acknowledged the Eighth Circuit's decision in Shelton v. American Motors Corp., 805 F.2d 1323 (8th Cir. 1985), but stated that "a number of courts have found that Shelton does not apply where the lawyer to be deposed acts as a business advisor to the party, rather than its counsel." Id. at *3. The Court in Price found that based on the limited information, it was unable to conclude that the attorney was acting solely in a legal capacity and given the uncertainty of what "hat" the attorney was wearing at the time, an order entirely precluding her deposition was not warranted. Similarly, in Wright v. Life Investors Ins. Co. of America, No. 2:08-CV-03-P-A, 2009 WL 4347024 (N.D. Miss. Nov. 25, 2009), the Court observed, "[b]ecause counsel in the context of the corporate setting often play a role in the day-to-day operations of the corporation, the attorney-client privilege is increasingly difficult to define." Id. at *2. The Court in that case found that the Shelton factors were not controlling because the attorney was serving both business and legal functions. The Court observed that "[c]ertain communications . . .made during the operation of the task force may indeed be protected by the attorney-client privilege, but

4

the court cannot make a determination regarding privilege without more specific facts; counsel must determine whether assertion of the attorney-client privilege is proper on a question-by-question basis." Id. at *3. The Court agrees with this approach. It is clear that during the time period in question Ms. Vogel, was an attorney supporting provider contracting and was acting as both a business advisor and as legal counsel to Blue KC. Thus, some of the information she has may be protected by the attorney-client privilege, but some information may not be. Counsel for GS Labs has stated that it does not intend to depose Ms. Vogel regarding any legal strategy, but rather seeks to question her regarding the core business activities relating to GS Labs that do not involve attorney-client communications or privileged information. GS Labs is therefore directed to limit its questions to topics that relate to Ms. Vogel's role as a business advisor to Blue KC. Blue KC may also object to questions which is finds objectionable on the basis of the privilege.

**B. Blue KC's Claim for Work Product Protection re: Documents**

Blue KC states that two documents in question (BKC 00276519-20 and BKC 00276521-22) are protected by the work product doctrine. The two documents are described in Blue KC's privilege log as two emails sent to Maureen Vogel from Kevin Van Dyke and David P. Gaertner. Blue KC states that these two emails are protected because they were made in anticipation of litigation. Blue KC states that in light of the suspected fraud, the amount of money at stake, GS Labs' indication that it was only willing to negotiate regarding future claims and its engagement of outside counsel, Blue KC reasonably anticipated litigation prior to March 15, 2021.

In response, GS Labs states that the documents are not protected by the work product privilege because the timing and chronology of the negotiation with GS Labs

5

indicates that Blue KC was not *anticipating* litigation at the time the documents were created. GS Labs states that the doctrine applies only if a document was "prepared after a specific threat of litigation became palpable." American Modern Home Ins. Co. v. Thomas, No. 4:16CV215CDP, 2017 WL 3978369, *4 (E.D.Mo. Sept. 11, 2017). GS Labs states that when negotiations are continuing, courts have generally found the work-product doctrine does not apply. Rather, it is usually the insurer's final determination to deny a request for payment that usually triggers the work-product doctrine. GS Labs states that in March 2021, negotiations regarding pricing were on-going. GS Labs states that in response to a subpoena, BCBSA produced an email containing notes taken during a presentation by Ms. Vogel during a call with other health insurance representatives in mid-April 2021. During the phone call, Ms. Vogel stated, "[s]he was going to reach out to GS and try to negotiate a rate." An April 20, 2021, email from Erin Cutler, Vice-President of Provider Contracting, to GS Labs' attorney states that she had "anticipated proposing a full network agreement." Ms. Cutler states that she has "cc'd Maureen Vogel, our Blue Cross internal counsel that supports provider contracting. We would like to schedule a call this week so we can discuss the contracting options for GS Labs." GS Labs states that Blue KC's proposal of a "full network agreement" shows that they were not anticipating litigation. Additionally, GS Labs states that Blue KC's own investigative files show that Blue KC had not made any decision whether to deny GS Labs' reimbursement claims in March 2021, because Blue KC did not even receive any claims from GS Labs until April 8, 2021. GS Labs states that Blue KC did not open an investigations unit case until May 28, 2021. Additionally, GS Labs states that Blue KC cannot show that the documents were created for litigation purposes, as opposed to business purposes. GS Labs states

6

that when an insurance company generates documents to advance its business purposes of investigating and evaluating claims, the work-product doctrine does not apply, "even though litigation is pending or may eventually ensue." Piakowski v. Abdon Callais Offshore, LLC, No. 99-3759, 2000 WL 1145825, *2 (E.D. La. Aug. 11, 2000).

"[T]he work product doctrine, as set forth in Rule 26(b)(3)(A), protects from discovery 'documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).'" Nunnally v. Stillwater Insur. Co., No. 4:18cv00680PLC, 2019 WL 2009617, *5 (E.D.Mo. May 7, 2019). "However, the Doctrine is not an umbrella that shades all materials prepared by a lawyer, or agent of the client. It focuses only on materials assembled and brought into being in anticipation of litigation. Excluded from the work-product doctrine are materials assembled in the ordinary course of business." Piatkowski, at *2. In Nunnally, the Court stated:

> In the insurance context, the Eastern District of Missouri has recognized that "much of the paperwork generated by insurance companies 'is prepared with an eye toward a possible legal dispute over a claim[.]'" Electric Power Sys. Int'l. Inc. v. Zurich Am. Ins. Co., No. 4:15CV1171CDP, 2016 WL 3997069, at *3 (E.D.Mo. July 26, 2016). . . "Because of this, 'it is important to distinguish between an investigative report developed in the ordinary course of business as a precaution for the remote prospect of litigation and materials prepared because some articulable claim, likely to lead to litigation, . . .ha[s] arisen." Id. . . .More specifically, for the work product doctrine to apply to material generated by an insurer in response to a claim under a policy it issued, "the documents must have been prepared after a 'specific threat' of litigation became 'palpable.' That litigation was 'merely a possibility' is insufficient." American Modern Home Ins. Co. v. Thomas, No. 4:16CV215 CDP, 2017 WL 3978369, at *4 (E.D.Mo. Sept. 11, 2017)(quoting Lloyd's Acceptance Corp. v. Affiliated FM Ins. Co., No. 4:05-CV-1934-DDN, 2012 WL 1389708, at *4 (E.D.Mo. April 23, 2012)).

Id. at *6.

In the instant case, GS Labs sent correspondence to Blue KC regarding the diagnostic testing claims it would be submitting to Blue KC on March 2, 2021. (First Amended Complaint ¶ 88. After receiving the March 2, 2021 correspondence and the claims, Blue KC approached GS Labs to negotiate reasonable rates for the claims, as envisioned by applicable law. Blue KC and GS Labs had several discussions regarding the services offered, lack of medical records, and excessive cash prices. (First Amended Complaint, ¶ ¶154 -155). On April 20, 2021, an agent of GS Labs negotiating on GS Labs' behalf wrote Blue KC, stating, in part: "It is important to our negotiations that you understand that past testing services have been performed for enrollees and booked at the cash prices published by GS Labs on its website. These fees are already due and owing by [Blue KC]." Later, the negotiations reached an impasse after GS Labs refused Blue KC's offer. (First Amended Complaint, ¶¶ 157-158). The documents referenced above by GS Labs also show that negotiations were ongoing as late as mid-April. Blue KC filed suit against GS Labs on July 20, 2021.

After reviewing the timeline of events, the correspondence between the parties, hearing argument from counsel and reviewing in camera the two emails in question (BKC00276519 -BKC00276522, the Court finds that the documents were not prepared after a 'specific threat' of litigation was palpable. Accordingly, the Court finds that these documents are not protected by the work product doctrine.

## II. Blue KC's Discovery Issues

1. **GS Labs has refused to provide all analysis, audits, or review concerning the efficacy, reliability, timeliness, etc. of its testing services and operations.**

   GS Labs argues that this is unduly vague and overly broad and is a fishing expedition.

   Blue KC states that it is seeking documents concerning any audit that was

8

Case 4:21-cv-00525-FJG   Document 115   Filed 02/02/22   Page 8 of 12

performed to ensure the accuracy, timeliness or reliability of the COVID-19 testing performed by GSL. GS Labs does not explain how the request is overly burdensome or how much time or expense it would take to locate the documents.

**Ruling:** GS boilerplate objections are overruled. GS Labs is hereby ordered to respond to this discovery request.

3. **GS Labs has not committed to providing all claim data from Blue KC members who obtained testing from GS Labs outside of the KC area.**

   GS Labs states that this request is overly broad, unduly burdensome and disproportionate to the needs of the case because tracking down such information would be like trying to find a needle in a haystack.

   Blue KC states that it will identify a list of names and/or dates related to claims it received through its system of members who received testing services outside of the Kansas City metro area. Blue KC will also provide the dates of birth and purported dates of service for members who received services from GS Labs outside of Kansas City in order to lessen the burden on GS Labs.

   **Ruling**: GS Labs' objections are overruled. With the additional information provided by Blue KC, GS Labs is hereby directed to search for the information requested by Blue KC.

4. **GS Labs has not produced documents concerning its profits, losses, assets, liabilities, loans, general ledgers.**

   GS states that it will provide summary financial information that reflects its "actual costs." GS Labs states that Blue KC is seeking every document relating to its profits, losses, assets, liabilities and this would encompass a large portion of its business records, the majority of which would be duplication of documents already produced or the summary information that will be forthcoming.

   Blue KC states that it requires raw financial data and general ledgers in order to conduct a proper accounting of GS Labs' claims.

   **Ruling:** GS Labs' objections are overruled. GS Labs is hereby directed to provide Blue KC with the raw financial data and general ledgers which it requested.

5. **GS Labs has not identified individuals who were involved in establishing, reviewing or changing its "cash price."**

   GS Labs states that this is overbroad, unduly burdensome and disproportionate to the needs of the case.

   Blue KC states that this is a simple request aimed at determining the identity of possible witnesses on a topic that is relevant to the matter.

**Ruling:** GS Labs' objection is overruled. GS Labs is hereby directed to respond to this discovery request.

6. **GS Labs has not identified individuals who were involved in the administration of its COVID-19 tests, and has only identified individuals involved in billing, management and administration/operations.**

   Overbroad, unduly burdensome and disproportionate.

   Blue KC states that this request is relevant because it will assist Blue KC in locating, interviewing and deposing potential witnesses on important issues.

   **Ruling:** GS Labs' objection is overruled.

7. **GS Labs has not identified the employees or independent contractors who made complaints concerning its testing services, the prices charged or of GS Labs' operations/management beyond one instance in Missouri.**

   Vague, overbroad, unduly burdensome and disproportionate.

   Blue KC states that this request is relevant because it will assist Blue KC in locating, interviewing and deposing potential witnesses on important issues.

   **Ruling:** GS Labs' objection is overruled.

8. **GS Labs has refused to describe "all factors which led GS Labs to establish or change any of its purported cash prices."**

   The request for "all factors" is overbroad, unduly burdensome and disproportionate. GS agrees in good faith to attempt to answer this interrogatory, but must maintain its objection in an abundance of caution. GS Labs states that in determining its cash price it considered various prices and its early cost projections suggested that it would cost tens of millions of dollars to launch its testing capabilities.

   Blue KC states that factors used by GS Labs in establishing its "cash price" are relevant. It is the illegality/unlawfulness of the "cash price," the fact that no true "cash price" was publicly posted and the overcharging through the "cash price" which is at the heart of this dispute.

   **Ruling:** GS Labs' objection is overruled.

9. **GS Labs has not identified its revenues, profits, losses etc. that would allow Blue KC to calculate GS labs operating incomes and losses to asses its defense that its cash price was a result of its operating expenses.**

   GS Labs states that it will provide summary financial information, but that Blue KC is seeking *every* document relating to its profits and losses. This request is facially

10

overbroad and unduly burdensome.

Blue KC states that it requires raw financial data and general ledgers in order to conduct a proper accounting of GS Labs claims.

**Ruling:** GS Labs' objection is overruled.

## 10. GS Labs has not identified all investigations, whistleblowers, complaints, etc. regarding its testing services or its "cash price."

Counsel will address this issue at oral argument.

Blue KC states that the request is relevant because it is seeking to determine potential witnesses available to support its claims. Blue KC states that this request is tailored to specific instances of relevant misconduct.

**Ruling:** GS Labs' objection is overruled.

## 11. GS Labs has not identified instances where it did not follow applicable laboratory standards and testing instructions or where testing services were not provided or results were delayed.

GS Labs states that it provided three letters (dated 2/15/21, 2/26/21 and 5/14/21) in response to the first part of the interrogatory. The second part of the bullet point relates to interrogatory No. 14 which asked for the names of patients and test dates where GS Labs did not provide testing results to a patient or provided delayed results. GS states that this is irrelevant to Blue KC's obligation to pay for the tests.

Blue KC states that these requests seek information regarding GS Labs' defense that is excessive prices were warranted because it was providing "top notch" services and to determine the proportion of testing related to Blue KC that was performed under circumstance so unreliable or deficient that the claim should not be paid. Blue KC states that these interrogatories are designed to determine the reliability and efficacy of GSL's testing services, thus they are relevant.

**Ruling:** GS Labs' objection is overruled.

Date: February 1, 2022  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge