UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| BLUE CROSS AND BLUE SHIELD OF KANSAS CITY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) Cause No.: 21-cv-00525-FJG ) |
| GS LABS, LLC, | ) ) ) |
| Defendant. | ) |

## RESPONSE TO COURT'S INQUIRIES (DOC. No. 118)

1. On December 17, 2021, Blue KC offered to produce its policies and procedures subject to the Protective Order. Does GS Labs contend that the policies and procedures are not confidential? If so, state the reason. What is GS Labs' objection to waiving its right to contest the confidentiality of these documents? **Response: This question is directed to GSL.**

2. Why did Blue KC ask GS Labs to withdraw the rest of its discovery related to these policies and procedures? Would Blue KC be willing to respond to the discovery if the documents were produced subject to a protective order?

**Response: Blue KC asked GS Labs to withdraw portions of its discovery related to Blue KC's policies and procedures as part of its effort to negotiate a resolution to a discovery dispute.**

**Blue KC maintains that extensive discovery of its written policies, procedures, and internal deliberations are not within the scope of discovery. The core question in this litigation is coverage - whether millions of dollars of claims for COVID-19 testing are payable by operation of the Families First Coronavirus Response Act ("FFCRA") and other law. Even GS Labs describes this litigation as "a relatively simple instance of an insurer" not paying claims. Doc. No. 37. Where the determinative issue is coverage, policies, procedures, and the like are not within the scope of discovery.** See Sentinel Ins. Co. v. Haines**, No. 07-0690-CVWFJG, 2008 WL 695402, at \*6 (W.D. Mo. Mar. 12, 2008),** on reconsideration, **No. 07-0690-**

1

CV-W-FJG, 2008 WL 4371401 (W.D. Mo. Sept. 22, 2008) (where there are "no claims in this case relating to good faith claim handling practices and bad faith failure to settle, there is no need to delve into [good faith claims handling practices]." Here, there is no need to delve into Blue KC's deliberations, claims handling, or policies.

Not only did GSL's discovery target irrelevant materials, but the discovery propounded was exceptionally broad. In light of the lack of substantial relevancy, the discovery violated the rule of proportionality. GSL requested:

> **RFP No. 1** Documents and Communications regarding the implementation of the Families First Coronavirus Response Act ("FFCRA") and/or Coronavirus Aid, Relief, and Economic Security ("CARES") Act of 2020. . .
> **RFP No. 8** A copy of all notes, including handwritten notes, and minutes from any internal meetings, including Board meetings that discuss COVID-19 testing, including negotiation of rates, out-of-network testing providers, Blue KC's obligations created by and/or pursuant to the FFCRA and the CARES Act, member or patient responsibility for the cost, adequacy of testing sites, and standing orders for any COVID-19 testing
> **RFP No. 9** A copy of all instruction manuals, instructions, policies, procedures, guidelines and/or publications utilized and/or created by You that discuss COVID-19 testing . . .
> **RFP No. 10** A copy of all instruction manuals, instructions, policies, procedures, guidelines, publications, or any other Document utilized and/or created by You that relate to requesting medical records or Documentation in response to a request for payment . . .

Collecting all responsive materials would have imposed an undue burden considering the expansive request, the nature of the dispute, and the limited, if any, relevance of the materials.

The parties met and conferred on Blue KC's objections, and the parties discussed a potential compromise. After the conference, on December 17, 2021, Blue KC offered to provide certain policies and related documents that Blue KC was able to obtain without incurring an undue burden if GSL would withdraw the remainder of its request. Blue KC also offered to consider adding to its production other "discrete and identifiable policies, procedures, or analyses that [GSL] believe[s] are relevant".

Blue KC made its December 17, 2022, offer solely in an effort to resolve a discovery dispute without resorting to motion practice. Although Blue KC maintains that the discovery

2

in question is objectionable, it agreed to produce a subset of the documents sought so long as GSL did not attempt to compel Blue KC to engage in a burdensome collection process for all other responsive materials.

Without waiver of its objections, Blue KC was (and remains) willing to produce the documents identified in its December 17, 2021, offer of compromise if the documents remain subject to protective order. Blue KC continues to request that GSL withdraw the remainder of its overbroad discovery requests to avoid imposing an undue burden on Blue KC.

3. Why does GS Labs believe that these policies and procedures are within the scope of discovery? How specifically do these policies and procedures relate to GS Labs' claims and/or defenses?
**Response: This question is directed to GSL.**

4. What information does GS Labs believe Dr. Sweat can provide regarding the policies and procedures in question?
**Response: This question is directed to GSL.**

5. What topics does GS Labs intend to ask Dr. Sweat? Why does GS Labs believe that it is necessary to have these policies/procedures produced before his deposition?
**Response: This question is directed to GSL.**

6. In Blue KC's Rule 26(a)(1) Disclosures, it references that Dr. Sweat would provide information regarding Blue KC's policies & practices. Specifically, what policies and practices is this a reference to and how does it differ from what the defendant is requesting?

**Response: If necessary, Dr. Sweat may testify generally, and at a high level, to Blue KC practices and policies responding to the pandemic. GSL has repeatedly accused Blue KC of failing to pay for COVID testing claims in general terms and responding inappropriately to the pandemic.** *See e.g.* **Doc. 4 (Answer) ¶¶ 1, 47 ("Blue KC appears to be downplaying the severity of the pandemic. . ."; https://www.yahoo.com/now/gs-labs-countersues-fires-back-154800174.html (GSL stating, "you'd think this insurance company would make people their priority, not profits"). Blue KC does not concede that these topics are strictly relevant to the core dispute framed by the pleadings, however, Dr. Sweat is able to provide responsive testimony should GSL's arguments be admitted.**

3

Dr. Sweat may also provide medical background or explanation of terms and concepts potentially relevant to other aspects of the case. Several of these appear in Blue KC policies and related documents previously produced. Although these concepts are not directly relevant to coverage, the Court may find background testimony helpful. For instance, Dr. Sweat is qualified to provide medical testimony explaining concepts in the following documents produced by Blue KC:

- BKC00000001 identifies "CPT and HCPCS" codes and coding relating to COVID-19 testing;[1]
- BKC00280959 discusses "ICD diagnosis coding guidelines," among other medical terms;
- BKC00280583 is Blue KC's "Pathogen Panel Testing" policy. Dr. Sweat is able to testify to the nature of "panel testing" and the fact that in the outpatient setting, multiplex PCR based panel testing of six or more respiratory pathogens is considered not medically necessary. This may provide useful background;
- BKC00281148 briefly discusses the concept that the CARES Act only covers "diagnostic" testing. Dr. Sweat may also testify to the differences between "informational" and "diagnostic" testing. *See generally* Doc. 14 ¶ 125 (discussing non-diagnostic, informational testing conducted by GS Labs).

Dr. Sweat was not intending to offer testimony relying on or referring to any of the unproduced documents identified in Blue KC's December 17, 2021, proposed discovery compromise.

---

[1] Confidential documents identified in this filing will be emailed to chambers but not filed.

Respectfully submitted,

**CAPES, SOKOL, GOODMAN & SARACHAN, P.C.**

By: */s/ Aaron E. Schwartz*
Aaron E. Schwartz, #58745
David C. Hollander, #73250
8182 Maryland Avenue, Fifteenth Floor
St. Louis, MO 63105
(314) 721-7701 (Telephone)
(314) 721-0554 (Facsimile)
schwartz@capessokol.com

*Attorney for Blue Cross and Blue Shield of Kansas City*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served via on all parties of record by operation of the Court's electronic case filing and management system this 7th day of February 2022.

*/s/ Aaron E. Schwartz*